We'll proceed with our first case, which is called John Doe, but I guess it's really important for the court to represent the petitioner, John Doe. My name is Attorney Justin Conlon. And this case presents several issues. Do you reserve time for rebuttal? Yes, I reserve five minutes, Your Honor. We're going to keep you to your time schedule, so that's a lot of rebuttals, so your main argument will seem relatively short. Okay. So I think this case presents several issues. From the petitioner's point of view, I think sort of the crux of the case is the aggravated felony issue. I think that's really the heart of the case, because that's ultimately going to decide whether the petitioner is permitted to remain in the United States or not in the end. Although we may not get to that, depending upon the other issues. Yes, if the government didn't properly charge him as an arriving alien, then the whole proceedings should be terminated because they were endowed because the petitioner is not an arriving alien at all. Well, but he was because, well, he should be deemed to be because he was a lawful permanent resident who then was convicted of a crime of moral turpitude, was he not? Yes, but at the time, the respondent was actually, or the petitioner, excuse me, was convicted more than a year after he actually applied for admission. So what was his status when he re-entered the United States? Because the language in the statute isn't one of conviction, is it? No. The statute says that you can be not admissible to the United States in three ways. One is if you're convicted of an offense. One is if you admit to committing an offense, regardless of whether you're being convicted. And the third way is if you admit to specific things that you've done which fit under a statute that would make you inadmissible if you had been convicted of them. And at the time the respondent sought admission, he hadn't been convicted, and he made no admissions. There's nothing in the record that specifically shows that the petitioner made any admissions. I misspoke earlier. The section I was referring to is 101A13C and said has committed an offense. It wasn't for sure that he had committed. It was only an arrest warrant. But proceedings weren't instituted. His notice to appear didn't occur until after he had been convicted. So at that time, wasn't it appropriate to deem him or have him regarded as seeking admission under that section? Because clearly then he had committed the offense. I agree with him that it doesn't really make much of a difference because if he isn't, then they can just try to deport him based on seeing crimes. So that's why I think the crux of the case is the aggravated felony issue. Let me go back to that initial part of the case. Isn't the burden different? They tried to remove him as opposed to trying to deport him. Yes. Isn't the burden different? He has to show that he's entitled to cancellation versus the government has to show that he's removable. Yes, sir. Okay. And it seems to me the statute does say whether or not he... When he's at the border, whatever border he was at, he was in an airport here, the government has to show by clear and convincing evidence that he committed this offense. Yes. All right. Now, why isn't the arrest warrant that was issued based on probable cause sufficient to show by clear and convincing evidence that that offense had been committed? Well, because I think to sustain an arrest warrant, you don't have to prove clear and convincing evidence. Is there a difference? Well, I think there is. I think the probable cause standard is down here and the clear and convincing standard is significantly higher in terms of what evidence you have to prove that the defendant actually committed the offense. And I think the second, I think sort of the stronger part of the argument, even if we can see that the arrest warrant was enough to treat him as an applicant for admission, once the petitioner is in that position, you have to decide whether he's admissible or not. I mean, I think this question focuses on what I was implying earlier with my question about the statute. Isn't the word of equivalency committed? And just what must be shown at the time, on the grounds, at the airport by the immigration officials? Well, I think the government certainly has an argument that that's enough to show potentially that the act was committed, but that the warrant is enough. The arrest warrant. The arrest warrant. Now, I can see that there might be an argument on that point. But I think once you get to that point, that's not the end of the case. That just means that the government is allowed to treat him as an applicant for admission. Then they have to decide whether he's actually admissible to the United States. He was still seeking admission. Yes. As of the time that the notice to appear was lodged. But essentially, what the petitioner's argument is that at the time the petitioner was an applicant for admission, he hadn't been convicted and he hadn't made any specific admissions that would have made him admissible. So once they reviewed his application for admission, the petitioner was admissible. And basically, they said, well, we're going to stall on this to wait to see if maybe he might become an admissible. Well, isn't that permissible? Particularly when they stalled and during their period of delay, he was convicted. Maybe he would have been acquitted and they would have said, okay, we can't prove that he committed this. Certainly, I agree that it makes sense for the government to have some period of time to sort of investigate, to see whether someone's admissible or not. But I don't see why they needed a year to decide whether the petitioner was admissible to the United States or not. I think it was pretty clear that he was admissible at that time. But that issue isn't in the briefing, that there's somehow a stopple. Don't you have a stopple? Yes. I am making a stopple argument in the briefing. Basically, I said that there basically isn't an issue of due process rather than a stopple. I think you can frame it as a due process argument, yes, Your Honor. But then again, you'd cry foul if he later were acquitted and they had said, you know, this is proof enough that he committed it. And then later, you know, you would have said they should have stalled until after they were sure that he had been convicted. And there's some reason for the government to then find out, did this person commit this offense? We're not going to try to kick him out unless we're sure that he did. I mean, it's almost a matter of fairness going the other way. Let me back up because I think we do want to get to the other issue. But there is no statement in 13C that the commission and the proof of commission has to be as of the time of entry. Is there? When he was seeking admission, it was deferred. He was paroled into the U.S. and then referred for prosecution. Right? Yes. OK. And then he was still seeking admission. At the time the notice to appear was issued. That's when the proof has to be. Yes. But essentially what the petitioner's argument is, is that the government can't say, well, we're not going to admit this person just to wait to see if maybe he might become an invisible of some indefinite future date. That leaves returning residents in this sort of limbo where the government can basically do whatever they want when they're at the border and they're at their mercy. All right. We're bearing down on you at the end of your time. On the other issue, why isn't the Kalela case really on all fours here in terms of what was charged in the information? I mean, there's a one-page, two-page information at 698, 699 in the appendix that the information charges the scheme and therefore gets you above the $10,000 level. Does it not? I think the statutes are much different. The bank fraud statute issue in that case made the actual scheme itself the crime, whereas in this case it's not the scheme, it's the specific wire fraud. Well, isn't the language in the plea agreements significant here? Yes. Are we working with the plea agreements? Yes. Because I think the parties specifically said in the plea agreements, we agree that the loss that can be used to calculate restitution goes beyond the specific act that the petitioner was convicted of. I think the fact that it's not the scheme. It's not the case in the entire scheme. Yes. More than $120,000 with less than $200,000. So I think the parties specifically anticipated in the plea agreement that the court would be using loss amounts that weren't tied to the specific thing that the petitioner was convicted of, but was instead related conduct that he wasn't actually convicted of. But it is tied. The information talks about beginning in or about January 2006, the defendant aided and abetted. As part of the scheme and artifice to the fraud, I mean, it's one thing if you just had this $164,000 bit of conduct in the information. But the information, which is what he was convicted of, versus the scheme. Well, I think the way that I describe it is if you look at the aggravated felony fraud statute, it says that you look at the actual loss caused by the conduct that you're convicted of committing. And the scheme doesn't cause any loss. I mean, you and I can sit down and scheme that we're going to go do something. But it's the implementation of the scheme that actually causes the loss. And the only actual thing that he was convicted of actually doing in furtherance of the scheme is this one specific act of less than $10,000. And that's what the immigration judge found in the first instance. And that's what the petitioner believes was the nature of his conviction. Basically, there's a plea agreement with the government. We'll agree to plead guilty to this as long as you frame the information in a way that my conviction isn't an aggravated felony. I think it's pretty clear that that's what happened in this case. All right, thank you. We'll hear from him. Thank you, Your Honor. May it please the Court. My name is Lindsay Zimlicki, and I represent Respondent in this matter. All right, could you pull the microphone down just a little bit, please? Yes, thank you. I'm going to start by addressing the inadmissible alien portion of the brief. I just want to sort of clarify a couple of things. When the petitioner was paroled into the United States, he was not deemed inadmissible at that time. He was paroled into the United States so that he could defend himself in prosecution because there was a warrant out for his arrest. Where is that in the record? Where is the record clear as to exactly what happened? Because on the very last page of the appendix, page 806, it says you were paroled August 29th for prosecution. Correct. Correct. So he was paroled into the United States under 8 U.S.C. 1182 D5A. So there was nothing at that point as to his admissibility as such. No, at that point, let me start back at the beginning. The Attorney General has been given the discretion through Congress, through 1182 D5A, in order, the discretion to parole certain individuals into the United States. Isn't that only if there's clear convincing evidence that he had committed the offense? No, Your Honor. In all actuality, this Court lacks jurisdiction to review the Attorney General's discretionary decision to parole. Well, isn't that a question of law? Isn't that ultimately a question of law in which we do have jurisdiction? Jurisdiction? Yes. The Court has the ability to determine its jurisdiction. So you're saying that because the Attorney General is given discretion, we can't review that act of discretion? That's correct. But doesn't the crux of the Attorney General's decision become a question of law as to whether or not he had committed, that the government had proven that he could prove it by clear convincing evidence that an offense had been committed when he was at the airport? No, Your Honor. The only thing that the government had to prove is that he was inadmissible post-conviction. That's why they're two separate issues. If you'll just bear with me for a second. Okay. He was paroled into the United States under 1182. See, I'm trying to get before you paroled. There is nothing before you. He was paroled. He showed up at the airport. He said, I'm Rudolph, and I'm a little permanent resident, and I'm entitled to reenter the United States. No. Why not?  Yes. But doesn't the law say that you only get vested in that discretion if the LRP had committed an offense? No. No? No. Okay. No. So nothing really happened at the airport. That's exactly right. How does this work? I would love to tell you. All right. What happens at the airport? What happens at the airport is that when a petitioner comes in, let's say in this instance it's an LPR, and something like a warrant pops up, then the attorney general has the discretion to parole that individual into the United States. Yes, the reason he could treat him as an arriving alien was because there was evidence that he may have committed a crime. May have. May have. The discretion to refuse him entry or parole him in is within the attorney general's discretion. Do you have a case that supports this position? Yes. Connally v. Mulder. It supports that this is a discretionary decision to revoke the court's denial of jurisdiction. Do you have a case that supports your view of what the law is? My view of what the law is is that the court doesn't have the discretion to review the attorney general's decision. No. But there are two separate things. There were no proceedings until the notice to appear was filed. There was no reason to because once his parole was revoked, he retained his LPR status. That's kind of like going into this little black hole for a while. But in the United States, he was allowed into the United States. He didn't lose his status. In fact, he was given the opportunity to come into the United States to prove that he hadn't committed the crime. He hadn't been charged as an admissible at this point. There were no charges against him. So we can surmise that had he been acquitted, they wouldn't have instituted proceedings. Right. And he wouldn't have retained his LPR status because once parole was revoked, he returned to the status that you had when you were given the parole. So the notice to appear 101A13C takes effect, that he'll be deemed to be seeking admission, and by that time, it was clear he had committed. Correct. By the time that he was charged as actually being inadmissible, he had actually been convicted. And at that point, Judge Fischer, you're correct. The government has a verdict to prove that he is inadmissible. I have to say the briefing did not make that very clear. In fact, the briefing didn't really address at what time, and I was under the misimpression that we were talking about the time of reentry, that you had to prove he was committed. But you're saying that's not correct. It's at the time that their actual proceedings occurred. Yes. I don't agree with that. I still have a question. Given the language of the statute, which is committed, what is the information available to the agent upon which the agent makes the determination on the spot? Because it is granted within the Attorney General's discretion on a case-by-case basis, that's the parole statute. And in this particular case, under 101A13C5, if you have an LPR who has committed a crime, then the Attorney General, through the ICE agents on the ground, has the discretion to say, okay, well, let me repeat. Well, how does the Attorney General know he has committed? I mean, there's a huge difference between the statute that says that he's been convicted and the statute that says he committed. I understand that, Your Honor. But you have to – and I understand why that is where the court wants to go first. But you have to understand, no guidance is taken away from him. He doesn't have the guidance of any right. Wait. Judge Smith is asking you about how they prove that he was committed at the time of reentry. Is that relevant? No. Okay. What is relevant at the time that he walks in there and you say there's discretionary parole? What does that statutory provision say the Attorney General has to know or have? Nothing. It's completely within the Attorney General's discretion. So there is no have committed that was relevant at that time. I know you want to answer Judge Rendell's question, and I want you to answer that. But if you go to page 25 of your brief, and I assume you wrote this brief, can you even italicize the word committed when referring to this section? It seems to me in your argument you want to read the word committed out of the statute. No, Your Honor. The reason that the government in this court has held that the court does not have jurisdiction to review the Attorney General's decision to parole someone in. So therefore, what happened at the border is not before this court. What is before this court is his removal order. Don't we – let me stop you a second. I think this is where we're focusing. Doesn't this court at least have the right to determine whether or not the government had the right to even stop him and say we're going to parole you? No. No. We don't have the right under the law to review whether or not statutorily the government had that permission. No. What statutory provision controls that issue? INA 212D5A is the parole statute, which this court has held in a lockup, which we briefed extensively. It falls under the jurisdictional bar of 242 – INA section 242A2B2, that this court does not have jurisdiction over discretionary decisions of the Attorney General. An arriving alien remains an arriving alien even if paroled pursuant to 212D5 of the Act and even after such parole is terminated or revoked. Shouldn't your argument be that the only thing that that committed focuses on is in proceedings, which did not occur until after the conviction? Isn't that really your argument? Well, it is my argument except that – yes, I mean, because honestly, the treating him as an indisability does not really come into play until he's actually charged. I think that just wasn't clear enough. When he's paroled into the United States, he kind of enters into, as I said, this black hole where he's just a traitor. And in all actuality, he sees it as a penalty, but in reality it's a positive because he was able to come into the United States, he didn't lose his status, he was able to defend himself in his criminal case for prosecution. All right. What rights – what, if any, rights does one lose as a legal permanent resident if you're paroled into the United States as opposed to being a legal permanent resident who is not subject to any rule? The only provisions that are different are detention. All right. Suppose he – I mean, that seems to me to be a big difference. Suppose the bond on the offense for which he was charged was $10,000. He posted the bond. You're saying that the only difference is detention and he'd be detained while he was on parole status? Well, it's not necessary that he would be detained the entire time, but the attorney general has the right, again, it's a discretionary right, and in some cases it's mandatory to detain an arriving alien if the ICE agent believes that he is not entitled to admission. Was he detained here? I believe he was detained originally, but then I believe he was released from detention. Let's suppose he never left the country and he was charged with this offense and he was just here. Would he be subject to parole and detention? No, he wouldn't need to be paroled because he's still in the United States. He would be charged individually. Yeah, okay. And at that point he could be detained. So there is a real difference here. Well, he would have been detained anyway because he had a warrant for his arrest. I thought he posted bail. He made bail. Well, and he may have even posted bond in this particular case. I'm not sure. I have to admit that the detention portion of it is what goes before the district court, and I believe this court has heard that portion of the case, but that is not my area of expertise. I understand, okay. And because I'm losing time, I just would like to move on. So anyway, we maintain that the decision to parole him into the United States is not before the court, and it doesn't matter anyway because he hadn't lost any status at that point. He didn't lose his status until he was actually charged as inadmissible, and at the time that he was charged as inadmissible, the government had clear and convincing evidence that he had committed the crime for which he was charged as being inadmissible, and he did not raise before the board or before this court that his crime does not constitute a crime involving moral interpretation. How about the amount of the loss? Isn't this a bit of a gotcha? You know, you count one, he pleads to $6,400, and all of a sudden, even though clearly he didn't plead to more than that, even though there were 120 taxpayers, there's a loss of over $10,000 being charged. Well, actually, no. First of all, I want to start by saying, as the court pointed out earlier, that because we are looking at this for relief from removal purposes, the burden is on the petitioner to prove that his crime was not an aggravated felony. But in answer to your question, Your Honor, and again, this is a situation where I believe the brief could have been clearer. Since the case is discussed in the brief, we have Nijuron, and Nijuron is raised in the brief. But Nijuron's a little different. That has to do with you have to have, does the jury have to have found the elements, have to have found the loss. That's a little bit of a different case. Well, but in all actuality, they look at, they discuss what documents can be looked at in order to determine the loss amount. And the stipulation, and in Nijuron, the court looked at the stipulation for sentencing purposes in a restitution order, which are two of the documents that we have in this particular case. Here we have, namely, a plea agreement, which incorporates these three documents, an information, a stipulation of offense conduct, and a pre-sentence report. And all of those documents together show that Rodoff admitted that there was an overarching scheme, that he was part of the overarching scheme, and that not the intended loss but the actual loss of that overarching scheme was more than $120,000 but less than $200,000. But it has to have been convicted of an aggravated felony, and that is an offense that involves fraud or deceit in which the loss to the victim exceeds $10,000. It has to have been convicted of that. Correct. And his plea agreement constitutes his conviction, and his information, stipulation of offense conduct, and pre-sentence report were all subsumed in that. There's also a case in this court called Kaplan 602 F. 3rd. 260, which looks at... Wait, wait, wait. Was that in your brief? It is not, but I can 28-J it to the court. You did 28-J it? I can 28-J it. Just give us the site now. 602 F. 3rd. 260. All right, and what does it say? And basically that looks at... This statute looks at the INA section 101, 843 M1, post-Mija 1. And in that case, this court held that no plea agreement is even necessary, that the immigration judge can rely on the information in the pre-sentence report. And here, what we're saying is that these documents, the plea agreement which incorporated all of these documents, clearly sets forth that he took part in an overarching scheme much like... So your position is that the plea agreement and the language of it answers the question. Correct. But this court could even look... Even if these other documents were not subsumed in the plea agreement, this court under Mija 1 could look at them, and they established that it was in excess of $10,000. All right, thank you. Thank you. Mr. Conlon? Yes. Thank you, members. So I want to address a few points that were discussed. One is the parole rights that were denied to the petitioner who was paroled. I can see two issues. One is the detention issue that the government raised. If you're detained as an arriving alien, you have no right on the bail hearing before an independent immigration judge, whereas you do have that right if you're an admitted alien. Second, you're not eligible to apply for naturalization if you're a paroled alien, but you can apply for naturalization if you're an admitted alien. So the petitioner was denied the right to apply for naturalization as long as he's a paroled alien. Second, on the jurisdictional issue, the Real Life in the Act specifically says the court possesses jurisdiction to review constitutional and legal issues. I think that sufficiently provides jurisdiction to review this parole issue. But where in the statute, the regulations, does it say that at the time that he arrives at the airport, they can only parole him if they have enough evidence to show that he had committed this offense, the moral prejudice offense. Well, I think because the statute specifically says returning residents shall not be considered applicants for admission and shall be admitted unless there's evidence. But he wasn't admitted when he showed up at the airport. He was paroled. There was no determination as to his admission. But I think the statute basically says when you're a criminal resident and you're at the airport, the default rule is we let you back in automatically, no questions asked. Wait a minute. Where is that default rule? Well, I think it's in the same one-on-one statute. It says a returning resident shall not be considered an applicant for admission unless one of these specific exceptions applies. So the government basically is required to show that one of these exceptions applies, and if it doesn't, then they have to admit him. So I would say that the statute gives returning residents the statutory right to re-enter the country unless there's some specific evidence against them to show that they're not admissible. Now, I think that's what makes this different, because I know the government cites a few decisions in this one. Well, that would be true if this statute said at the time of re-entry, but it doesn't. And proceedings weren't started here until after he was convicted, correct? Yes. There were no proceedings initiated. But he was still, you know, I think the government's, I mean, in their own words, you know, they say we put the petitioner in a black hole. Well, the Supreme Court says returning residents have a right to due process of law. You know, I don't think due process permits the government to place a permanent resident in a black hole for some indefinite time period. You know, when we, in our discretion, that the court is not allowed to review, we'll decide to maybe take this person out of the black hole at some point. You know, I don't think that that follows the due process. Well, the black hole really is his status. Other than that, and other than the detention, he was walking around, he was a lawful permanent resident, and he was just fine for that time. Well, like I said, he was subject to being detained at the government's discretion with state claims unrevealed. And second, the petitioner was not eligible to apply for naturalization as well. When you're a returning resident, you can't apply for citizenship, so you're sort of left in this hole where I'm a returning resident, I can be arrested and detained at any time. Well, maybe he shouldn't have left. We have more immigration cases where people leave and they come back and they're such— Your Honor, if the petitioner had left, I probably would have provided him with some advice. That's what the immigration lawyers, the first thing they should say is do not leave the country. That is the first advice. If there's any problems in your case, do not leave the country, because something like this can happen. Then I was also reviewing the language of the Tenth Circuit case that the court discussed. I think there's some significant differences between the information in this case and the language of the statute in that case. The Bancroft statute in that case— That's the Kalela case. Yes, Your Honor. That says that the defendant is convicted of the execution of a criminal scheme, which I would say when you're convicted of the execution of a criminal scheme, you're convicted of each act that was done in the execution of the scheme. But if you read the information in this case, it says that the petitioner devised a scheme. It doesn't say that he was convicted of executing the scheme. It says he was convicted of devising the scheme and then doing one specific thing to implement that scheme. Normally associated and participated in the scheme to defraud by opening up numerous bank accounts. Opening up bank accounts? It doesn't say— Into which, unfortunately, obtained tax refunds were deposited. The bank accounts were part of the scheme, weren't they? Yes, the bank accounts were part of the scheme. I certainly admit that. But I think the Bancroft statute in that case, you're convicted of the execution of the scheme. This statute, you're convicted of devising the scheme. Like I said in the brief, you can—I mean, I can devise a scheme with anybody. It doesn't actually cause a loss. And the statute looks at the losses caused, not the losses intended or contemplated. Thank you, Your Honor. Thank you. Take the case under advisement. Thank you. The argument was helpful.